ATHENIA STEEL & WIRE CO. *v.* UNITED STATES (No. 208).[1]

1. FLAT PIECES OF STEEL NOT WIRE RODS.

Flat pieces of steel, 3 inches by one-eighth of an inch in thickness, and 30 or more feet in length, and known commercially as "flat rods," are not flat wire rods and were dutiable not as flat wire rods, but under the clause "steel in all forms and shapes not specially provided for," paragraph 135, tariff act of 1897.

2. DESIGNATION COVERING ULTIMATE USE.

To bring a manufacturing material within a particular designation in a tariff law that covers one of the ultimate uses of that material, it should be found to be so far advanced by the processes applied to it in fitting it for that ultimate use that either on an examination *per se* its ultimate use is clear or it is found so far advanced that its utility for another possible use has been destroyed.

United States Court of Customs Appeals, April 17, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 22752 (T. D. 30364).

[Affirmed.]

*Brown & Gerry* for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Thos. J. Doherty* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This controversy is over what is conceded to be steel in the form of bands or strips about 3 inches wide, one-eighth of an inch thick, and 30 feet and over in length, imported in coils. The collector at the port of New York classified them for dutiable purposes as "steel in all forms and shapes not specially provided for," under paragraph 135 of the tariff act of 1897. Its pertinent provisions are:

135. Steel ingots; * * * sheets and plates and steel in all forms and shapes not specially provided for in this act. * * *

The appellants here, protestants below, made several claims in their protest. The material and the only one insisted upon at this hearing is laid under paragraph 136 of the act, alleging the merchandise to be "flat wire rods." The provisions of that paragraph are:

136. Wire rods: Rivet, screw, fence, and other iron or steel wire rods, whether round, oval, flat, or square, or in any other shape. * * *

It was the evident purpose of the importers at the hearing before the board to sustain their claim by testimony that the imported merchandise was commercially known in this country as "steel wire rods." The testimony, however, fell far short of supporting that claim; in fact, conclusively showed the contrary, and in their briefs and at the hearing before this court counsel for appellants expressly abandoned that claim. Their case is now based upon the claim that the merchandise is within the common acceptation of the term "flat wire rods" or "wire rods."

_____

[1] Reported in T. D. 31528 (20 Treas. Dec., 810).

Aside from determining that question in the light of the lexico-graphic definitions which ordinarily bespeak the import of language as commonly and generally understood, the testimony introduced by both the importers and the Government affords substantial aid and comports precisely with that understanding.

Mr. Ferdinand Wilckes, treasurer of the importing firm, and of experience extending over a number of years in the wire manufac-turing and marketing industry, together with other witnesses, agreed as to the manufacturing status of the importations.   The gist of the testimony is that the merchandise is produced by heating steel bil-lets about 4 by 4 inches in dimension and rolling them down hot in a rolling mill.   As the merchandise thus comes from the rollers it is in the shape and *as here imported.*   After importation, and when it is put upon its course to final use, as made by the importing firm, it is again put through rolls and rolled down into longer lengths and a much thinner thickness, the width remaining the same.   Thereafter it is put through another machine which slits this comparatively broad band into more narrow widths.   There are intermediate heatings as a part of the cold rolling operation.   It does not appear, nor is it of controlling importance, whether or not there are incidental annealing processes.

With singular uniformity the witnesses produced by both the importer and the Government, when their testimony is weighed in its fullness, substantially agree that the merchandise as imported is known not as "flat *wire* rods," but as "flat rods."   It is precisely this difference which marks the crux of this case.   Flat wire rods are rods of that requisite carbonization and fitness ready to be drawn into wire. Flat rods may be in that condition, but if designated without the qualification, probably have not reached that stage of single useful-ness, but may be converted to many other uses as well.

Without reviewing that testimony or quoting any parts thereof, which we would deem here unprofitable, it may be conservatively said within the lines of this record that a vast preponderance of the testimony makes for the proposition that the merchandise is referred to in trade and commerce as "flat rods"; that it is used and usable for a variety of purposes other than that of its ultimate use by these importers, the making of wire, one of which other uses is the making of flat steel springs, as is corroborated by its invoice designation, "Hot rolled *steel for springs*"; that it is not flat wire rods, but is "flat rods," which is the material out of which flat wire rods, as well as a great variety of other kinds of articles, are made.

We do not think this description or understanding, be it a com-mon or commercial understanding, brings the merchandise within the tariff designation invoked.   In order to bring any material for manufacturing within a tariff designation which covers one of its ultimate uses it should be so far advanced by the processes applied

thereto in the line of that particular ultimate use that, either from an examination *per se* evidences of its ultimate use are made clear, or so far advanced that its utility in any of its other possible uses shall have been destroyed. This is not the case here.

The same conclusion is indicated by reference to an accepted authority for the definition of "wire rod."

Standard Dictionary:

*Wire rod.*—(1) A billet of iron or steel after it has been passed through the rolling mill and been reduced in size preparatory to drawing. (2) Any metal rod of small diameter.

This merchandise is not in a shape preparatory to drawing. Other processes admittedly must be applied thereto before it is in a shape or condition for drawing into wire. While it has passed to a stage beyond the form of the billet, it has not progressed to the stage which either identifies it for, or makes it useful only for, the purpose of wire making.

A case precisely in point is that of Worthington *v.* Robbins (139 U. S., 337, 340). The merchandise there was "white hard enamel." The importing firm imported and used it solely for the purpose of enameling their watch dials, and claimed it dutiable as "watch materials." It was shown at the trial that the material was also usable in the condition in which imported for enameling the scale columns of thermometers, the faces of steam gauges, and other similar uses.

The Supreme Court said:

By the statement of agreed facts, the article was, when the tariff act applying to it was enacted, known and described in trade as "white hard enamel," and "is used for various purposes, including the making of faces or surfaces of watch dials, scale columns of thermometers, faces or surfaces of steam-gauge dials, and for other purposes when a smooth or enameled surface is desired." It thus appears that it is not used exclusively for the making of faces or surfaces of watch dials; and, although it is stated in the statement of agreed facts that the enamel in controversy was imported by the plaintiffs for use in making watch dials, and was in fact so used, there was nothing to prevent them from selling it to persons who would use it for the other purposes for which it is stated it is used.

It appears further that the form or condition of the merchandise as imported affords no evidence or indication of the use to which it is to be applied; that, in the form or condition as imported, it can not be used for any of the purposes mentioned, nor for any purposes whatever of practical use to which it is adapted or ever applied; and that, before it can be applied to any practical use, its present form and condition must be changed by grinding or pulverizing, and new processes of manufacture be applied.

It is apparent, from the facts stated, that the customs officers could not determine from an examination of the article to which of the uses named it was to be applied, or that it was to become the material of a watch. In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported. In order to be dutiable as "watch materials," the article, when imported, must be in such form of manufacture as to show its adaptation to the making of watches.

The article in question was, to all intents and purposes, raw material. If it were to be classed as "watch materials," it would follow that any metal which could ultimately be used, and was ultimately used, in the manufacture of a watch, but could be used for other purposes also, would be dutiable as "watch materials." In order to be "watch materials," the article must in itself bear marks of its special adaptation for use in making watches. The fact that the article in question was used in the manufacture of watches has no relation to the condition of the article as imported, but to what afterwards the importer did with it.

Since the appellants abandoned the claim that the merchandise is commercially known as "wire rods" or "flat wire rods" and rely upon the descriptive force of these words as used in paragraph 136, we think their claim without merit.

It is difficult to reconcile merchandise commonly contemplated by the mind untrained in any of the commercial distinctions of the iron and steel industry, on mention of the term "wire rods" or "flat wire rods," anything in any wise like this importation, which is a flat piece of steel 3 inches wide, one-eighth of an inch thick, and 30 feet or more in length.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.