SWEDISH IRON & STEEL CORPORATION *v.* UNITED STATES (No. 1533).[1]

BUNDLES OR COILS OF SWEDISH IRON RODS.

The language of paragraph 113, tariff act of 1913, is comprehensive, including, as it does, "rivet, screw, fence, nail, and other iron or steel wire rods." The testimony shows the goods were sold as iron wire rods and are used in this country as such. The record sustains the conclusion of the board that the merchandise was iron wire rods and dutiable under paragraph 113.—Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528) distinguished.

United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7672 (T. D. 35100).

[Affirmed.]

*Churchill, Marlow & Hines* for appellants.
*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now upon appeal consists of 502 bundles or coils of Swedish round iron rods, each rod being from 60 to 100 feet in length, and each coil weighing between 150 and 250 pounds. The collector assessed duty upon the article at the rate of 10 per cent ad valorem as iron wire rods under paragraph 113, tariff act of 1913.

The importers protested against the assessment, claiming duty upon the article at the rate of 5 per cent ad valorem as round iron in coils, under paragraph 103 of the same act.

---

[1] Reported in T. D. 35466 (28 Treas. Dec., 921).

The protest was submitted upon evidence to the Board of General Appraisers and was overruled, from which decision the importers now appeal.

The following is a copy of the two paragraphs of the act of 1913 above cited:

103. Muck bars, bar iron, square iron, rolled or hammered; round iron, in coils or rods, bars or shapes of rolled or hammered iron not specially provided for in this section, five per centum ad valorem.

113. Rivet, screw, fence, nail, and other iron or steel wire rods, whether round, oval, or square, or in any other shape, and flat rods up to six inches in width ready to be drawn or rolled into wire or strips, all the foregoing in coils or otherwise, including wire rods and iron or steel bars, cold rolled, cold drawn, cold hammered, or polished in any way in addition to the ordinary process of hot rolling or hammering, not specially provided for in this section, ten per centum ad valorem: *Provided*, That all round iron or steel rods smaller than twenty one-hundredths of one inch in diameter shall be classed and dutiable as wire.

As has been stated, the protest was submitted to the board upon testimony, and the board found thereon against the claim of the importers. The rule is well known that in such case the court should not disturb the conclusions of fact reached by the board unless the same are clearly contrary to the weight of the evidence. The present question therefore is whether the decision of the board upon the facts is clearly contrary to the weight of the evidence contained in the record. The question at issue was whether the merchandise was iron wire rods answering to the descriptions of paragraph 113 or was round iron in coils under paragraph 103, both above copied.

Four witnesses testified at the hearing, all of whom were called by the importers.

Witness Bernard Fortuin, shipping clerk of appellants, testified in substance that such merchandise was used in making chains, clevises, and pins for chains; that he knew of none being used to be drawn into wire, and did not cater to that trade.

Witness Fred M. Hyder, who has been examiner of iron and steel at the port of New York for 11 years, testified in substance that the merchandise, being in long coils, may be economically drawn into wire, whereas bars can not be; that but little iron wire is made now, and that the bulk of such merchandise is probably used in making chains, rivets, pins, etc.

Witness H. I. Potts, who had been an importer of iron and steel for 15 years, testified in substance that the merchandise was sold under the name of wire rods; that it was sold and used chiefly for the manufacture of wire and chain rivets; that about 75 per cent of such merchandise was sold by the witness for use in the manufacture of wire and chain rivets; that the merchandise as imported was not ready for immediate use in making wire, but must first be subjected to an acid bath to take off the scale, and then to a coat of lime to prevent it from rusting.

There is some slight confusion apparent in the transcript of the testimony of this witness, but the foregoing is a correct résumé of it according to our reading of the record.

Witness F. M. Hamilton, a wire manufacturer, who has known such goods for 40 years, testified, in substance, that the merchandise as imported must be pickled to take the scale off, and then limed; that this must always be done with such imported rods because if pickled before importation the elements (air and water) would affect them so that they would require such treatment again here; that they would not stand more than three days, and one night would sometimes spoil them.

We think that the testimony, of which the foregoing is the substance, sufficiently sustains the conclusion of the board that the merchandise was iron wire rods. It appears that it was sold under that name, and that in this country it is chiefly used as such material. It should be noted that the terms of paragraph 113 are very comprehensive, including, as they do, rivet, screw, fence, nail, *and other iron or steel wire rods.* The fact that the imported rods must be cleaned by an acid bath in this country before they may be drawn into wire is of no consequence, since it appears that this is necessarily the case with all such importations, because of the action of the atmosphere upon them while *in transitu.*

The appellants contend that the present case is ruled by the principles declared by this court in the case of Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528). We think, however, that there is a very substantial difference in respect to the facts established by the records in the respective cases. In the Athenia Co. case, as in this, the question was whether the merchandise was iron or steel wire rods. The merchandise there, however, was steel bands about 3 inches wide, one-eighth of an inch thick, and 30 feet and over in length, imported in coils. After importation, in order to prepare the material for drawing, it required to be put through rolls and rolled down into longer lengths and a much thinner thickness; it required, thereafter, to be put through another machine to be slit into narrow widths. The use of the merchandise as imported did not identify it as wire rods, nor was there any proof in the case that the article in question was sold under that name. Upon those facts the court held that the merchandise then in question was not wire rods. That holding, however, can not apply to the present merchandise upon the present record. It may also be observed, incidentally, that the present paragraph for wire rods is enlarged as compared with the corresponding paragraph of the act of 1909 in the particular involved in the Athenia case, *supra.*

The decision of the board is therefore *affirmed.*