WALTHAM WATCH CO. *v.* UNITED STATES (JAEGER WATCH CO., INC., PARTY IN INTEREST) (No. 4107)[1]

[1] T. D. 49425.

United States Court of Customs and Patent Appeals, February 7, 1938

*Barnes, Richardson & Colburn* (*Albert MacC. Barnes* and *Joseph Schwartz* of counsel) for appellant.

*Lane & Wallace* (*Samuel Isenschmid* of counsel) for party in interest.

*Joseph R. Jackson*, Assistant Attorney General, for the United States.

[Oral argument December 10, 1937, by Mr. Barnes and Mr. Isenschmid]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT. Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain unfinished watch pillar or bottom plates were imported by the Jaeger Watch Co., Inc. (in this appeal styled "party in interest") at the port of New York in 1935, and were classified by the Collector of Customs under paragraph 397 of the Tariff Act of 1930 as "articles * * * composed * * * in chief value of * * * copper" and assessed with duty at 45 per centum ad valorem thereunder plus 3 cents per pound on the weight thereof under section 601 of the Revenue Act of 1932.

The Waltham Watch Co., appellant herein, an American manufacturer of watches, protested the said classification and assessment of duty and claimed the merchandise to be dutiable under paragraph 367 (c) (2) of said tariff act as "pillar or bottom plates, or their equivalent," together with the additional tax of 3 cents per pound under said Revenue Act of 1932.

The United States Customs Court, Second Division, overruled the protest and from its judgment the American manufacturer has here appealed.

The pertinent provisions of the two paragraphs of the Tariff Act of 1930 involved follow:

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and

seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

\* \* \* \* \* \* \*

(c) Parts for any of the foregoing shall be dutiable as follows:

\* \* \* \* \* \* \*

(2) pillar or bottom plates, or their equivalent, shall be subject to one-half the amount of duty which would be borne by the complete movement, mechanism, device, or instrument for which suitable;

PAR. 397. Articles or wares not specially provided for, \* \* \* if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

At the trial, Exhibit 1 was introduced as representative of the articles imported. It consists of a copper-colored circular plate about $\frac{1}{16}$th of an inch in thickness by about $1\frac{3}{4}$ of an inch in diameter. It is conceded by all parties that it is less than 1.77 inches in diameter. The exhibit is perforated with twenty-eight holes of different sizes and in different locations and ten so-called pin pricks, the latter being locations for holes or indentures into which, if necessary, might be placed jewels or other parts of watch movements.

The appellant offered the testimony of four witnesses, while the party in interest offered the testimony of but one witness. The testimony is set out with accuracy and with sufficient detail in the opinion of the court below, and since there is no serious dispute on questions of fact, we think a brief summarization of the same will be sufficient here.

It is shown by the record that the articles involved are made in Switzerland and are intended, after being further manufactured in this country, to be used as pillar plates for watches or similar time-keeping devices. Some of the holes have been shaved and others have been threaded, in which instances there is nothing further to do in relation to them except to insert therein jewels, arbors, or other parts of a watch movement. The amount of work to finish the plate to be in a condition to go into a watch depends upon the particular kind of watch movement which is to be attached thereto, a watch with a great number of jewels requiring more prepared locations than one with a less number.

That pillar plates are essential and important parts of watch movements, that the articles imported are designed to be used and are suitable for use, when further processed, as pillar plates for watch movements and that they have no other use have been conclusively proved.

While some of appellant's witnesses testified positively that in its unfinished condition Exhibit 1 was known as a pillar plate and was a pillar plate for a watch, all testified that it was unfinished. One

witness stated that two operations were necessary to complete the pillar plate for the kind of watch in which the imported article was used.

The witness for the party in interest mentioned twenty-two separate and distinct steps involved in work done upon the article imported, after importation, which comprise counter-boring with high-speed drilling machines, but admitted that some of such work was involved in operations other than in finishing the plate. He stated, however, that after four counter-boring operations had been completed, nine or ten drilling operations were performed, which obviously meant that there were nine or ten different holes to be drilled, a part of which hole drilling consisted in counter-boring certain holes made in certain previous operations, but that all the work necessary to make a completed pillar plate might be performed by two classes of operations, one drilling and the other recessing.

The decision of this court depends upon the answer to the sole question presented: Are *unfinished* pillar or bottom plates dutiable under the above-quoted *eo nomine* provision for "pillar or bottom plates or their equivalent" in said paragraph 367. It is to be noted that said subparagraph (c) (2) contains no express provision for unfinished pillar or bottom plates, nor does it contain any similar provision, such as is found in paragraph 397, *supra*, "whether partly or wholly manufactured."

The trial court overruled the protest mainly upon the theory that the context of paragraph 367 indicates the intention of Congress to require classification in said subparagraph (c) (2) of such pillar plates only as had been fully completed. It called attention to the fact that after providing in subparagraph (a) for watch movements, it, in subparagraph (c) provided that "Parts for any of the foregoing shall be dutiable as follows," and then in subdivision (2) of said subparagraph (c) mentioned particular parts, namely "pillar or bottom plates, or their equivalent," without making any provision for "parts of such plates" or for "plates finished or unfinished." It is then pointed out that subparagraph (c) (3) calls for certain parts known as "assemblies and subassemblies" and that in subparagraph (c) (4) provision is made for "all other parts (except jewels)." After analyzing the provisions substantially as above recited, the court then said:

In our opinion the Congress having thus provided *eo nomine* for pillar or bottom plates and not having provided for parts of pillar or bottom plates, it necessarily follows that the provision for such plates means finished plates ready for use as such. This intention of the Congress is further borne out by the fact that said paragraph (c) (2) provides that such pillar or bottom plates—

shall be subject to one-half the amount of duty which would be borne by the complete movement, mechanism, device, or instrument *for which suitable.*

Obviously the word "suitable" implies suitable in the condition as imported, and not so-called pillar or bottom plates which must necessarily be subjected

to considerable further manufacturing processes before they are suitable for use as pillar or bottom plates in any movement, let alone some particular movement. The rate of duty is predicated upon the rate applicable to the movement. Hence the condition of the pillar plate must be a finished condition ready for incorporation as part of the particular movement. Otherwise, how could the collector determine the appropriate rate applicable to such movement? [Italics quoted.]

The trial court also stressed the fact that in subparagraph (f) of said paragraph 367, provision is made for "All cases, containers, or housings, designed or suitable for the enclosure of any of the foregoing movements, * * * whether finished or unfinished," and also that a provision containing the term "finished or unfinished" is found in paragraph 368, the clock paragraph. The court stated that it regarded it as significant that in paragraph 367 Congress provided for only one class of unfinished articles—casings, containers and housings, and that under the rule of *expresio unius est exclusio alterius* it was compelled to hold that unfinished pillar or bottom plates or their equivalents were not covered by said subparagraph (c) (2). On the last phase of the decision, the court relies strongly on the decision of this court in *United States* v. *Berger & Co.*, 13 Ct. Cust. Appls. 362, T. D. 41258, which will be more fully discussed hereinafter.

The appellant in this court, as it evidently did in the court below, relies upon the following cases to support its contention that the unfinished pillar plates at bar, upon the record as presented, must be held to be dutiable as pillar plates under subparagraph (c) (2), *supra: United States* v. *Riga*, 171 Fed. 783; *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873; and *Richard & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 470, T. D. 33883.

We are of the opinion that the said cases cited by the appellant support its contention and are controlling of our decision here, unless other circumstances suggest an intention on the part of Congress to the contrary. We will first discuss briefly the three cases, *supra.*

The *Riga* case, *supra*, was an appeal from the Board of General Appraisers (now the United States Customs Court) which had held forged rifle barrels, rough bored, which in this country had to be rifled, polished, and colored before they assumed the state in which they were fit for practical use, to be dutiable under the provisions of the tariff act of 1897 as "rifles and parts thereof" rather than as "manufactures of metal." The Circuit Court, after quoting the opinion of the Board of General Appraisers, which was written by General Appraiser Fischer, summarily affirmed the decision. The opinion of the board contained much language pertinent to the issue here at bar, and we quote a part thereof:

These rough-bored barrels are manufactured articles in a crude form, and it is conceded that they must be rifled, polished, and colored before they assume that

state in which they are fit for practical use. In a brief submitted to us the counsel for the government refers to G. A. 6312 (T. D. 27,207), and on that ruling asks this Board to hold that the provision in paragraph 157 for "rifles and parts thereof" includes only such parts of rifles as are in a finished condition when imported, complete and ready for adjustment. We are of the opinion that the provision of the tariff referred to should not be narrowed to the extent indicated by counsel. *We believe, when the article as imported affords evidence as to the use to which it is to be applied and has reached a form and stage wherein it is fit for no other useful purpose than as a part of a rifle, that then, for tariff purposes, it may safely be regarded as within the provision for parts of rifles. It is unreasonable to assume that only finished parts are within the terms of paragraph 157.* [Italics ours.]

A rough-bored barrel, when approaching nearly the finished condition, affords sufficient evidence as to its special adaptation for use as a rifle barrel, and would appear to us to be entitled to be so considered. *Worthington* v. *Robbins*, 139 U. S. 337, 11 Sup. Ct. 581, 35 L. Ed. 181; *Magone* v. *Wiederer*, 159 U. S. 555, 16 Sup. Ct. 122, 40 L. Ed. 258.

This court, in *United States* v. *Lyon & Healy, supra,* had before it, among other items, violin and cello necks which were cut into shape but which were not polished or fitted, nor did they have holes bored through them for the keys for the violin or cello strings. The court held that they were "so far shaped as to indicate *per se,* as imported, their ultimate use, and that by reason of their shape and condition as imported they are unfit for any other use," and then held that they were dutiable as parts of musical instruments notwithstanding the fact that there was no express provision in paragraph 467, tariff act of 1909, for such articles in an unfinished state or partly manufactured, and said in part:

The phrase "parts of musical instruments," as applied to merchandise of more or less definite construction, makes it dutiable according to use. If the merchandise is to be used in the make-up of musical instruments, becoming a part thereof, they are dutiable under this provision; otherwise not. The test of whether or not in the condition imported they are to be classified as such for dutiable purposes has been clearly defined by this court and the Supreme Court in adjudicating language almost precisely the same as that before this court. We said [referring to *Athenia Steel & Wire Co.* v. *United States*, 1 Ct. Cust. Appls. 494, 495, T. D. 31528]:

In order to bring any material for manufacturing within a tariff designation which covers one of its ultimate uses it should be so far advanced by the processes applied thereto in the line of that particular ultimate use that, either from an examination *per se* evidences of its ultimate use are made clear or so far advanced that its utility in any of its other possible uses shall have been destroyed. * * *

That is the doctrine of the Supreme Court in Worthington *v.* Robbins (139 U. S. 337, 341). * * *

  *       *       *       *       *       *       *       *

Applying these principles to the record and samples before us, and as heretofore described, it would seem that as to the violin and cello necks they should be properly classifiable as parts of musical instruments. *Their physical construction is such as to plainly render them unserviceable for any other purpose and to clearly identify them and their future use as parts of musical instruments.* [Italics ours.]

In *Richard & Co. et al.* v. *United States*, *supra*, the same paragraph of the tariff act of 1909 was under consideration as was in the *Lyon & Healy* case, *supra*, which provided for "musical instruments or parts thereof." Certain wooden violin finger boards, necks, pegs, and bridges which, before being used in the construction of violins had to be altered, were involved. In holding the unfinished violin parts to be parts of musical instruments, the court said:

The importers, however, urge that these articles are not parts of musical instruments within the meaning of the paragraph, but are unfinished parts; are in fact materials which have to be subjected to a further substantial process of labor before they are adapted for use.

We understand that the evidence establishes as to each of these articles that, owing to the various sizes of violins, these parts have been finished and perfected as far as practicable until it is known what in substance are to be its companion parts to constitute the finished violin. When this is determined more or less alterations in the parts under consideration must be made before the violin is finished, but *each one of them has already assumed such a form and shape that not only has its utility for any other use been destroyed but each article in itself bears unmistakable evidence of the purpose to which it is devoted and its adaptation therefor.* [Italics ours.]

The trial court sought to distinguish the above decisions and held that they were not applicable to the issue raised in the instant case. It stated that these decisions lay down nothing more than the well-established rule that—

imported articles which are complete articles and which require only finishing operations are properly classifiable under an *eo nomine* provision for such articles followed by the words "and parts thereof." In the instant case the subparagraph under which the plaintiff claims the present merchandise to be classifiable contains an *eo nomine* provision for pillar or bottom plates but no provision for parts of such plates.

We do not think that the position of the trial court with reference to the force and effect of the three decisions above discussed is sound. In the musical instrument cases and in the rifle case, it was not claimed that the articles involved were unfinished musical instruments or unfinished rifles, but that they were unfinished parts, which is exactly the situation here. It is the contention here that the articles at bar are unfinished parts of time-keeping movements which, by reason of the special rate applied to the particular parts were *eo nomine* designated under the parts provision. If an unfinished part of a musical instrument into which holes have to be bored and other work performed thereupon before it can be applied to its intended use, is a part of a musical instrument, we can see no possible reason why it should not also be held that an unfinished pillar plate for a movement for a watch or other time-keeping device, such as the plates at bar have been shown to be, should not also be regarded as parts of such articles.

It is stated in the opinion below that since Congress made no provision for *parts of pillar plates* in subparagraph (c) (2), it intended that the provision apply only to finished plates. If Congress had added the term "and parts" after the *eo nomine* provision for pillar plates, we would be at a loss to know to what kind of article the term would apply, since as far as we know pillar plates are integral and are not made up of parts. It is our view, therefore, that there is no significance to be found in the fact that Congress failed to provide for parts of pillar plates. Numerous examples in the metal paragraphs of the Tariff Act of 1930 might be cited where there is no provision for parts of an article and the reason is obvious. For instance, provision is made in paragraph 338 for screws and in paragraph 341 for steel plates of various kinds without any provision for parts. It might be interesting to note that in neither of these paragraphs, nor in numerous others in the same schedule, is there any express provision for articles in an unfinished state. On the subject of a distinction between part of a thing and the thing unfinished, some aspects of this court's decision in *United States* v. *Cohn & Rosenberger, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259, are not without interest.

One other consideration which brought the trial court to its conclusions, which are stated in the above-quoted language from its opinion, goes to the effect of the phrase in subparagraph (c) (2) "for which suitable." It seems to be the view of the trial court that this language requires that for a pillar plate to be classifiable as such it, in the condition imported, must be suited, without further alteration or processing, for use in a watch or other time-keeping device, and that by the use of the term "for which suitable" Congress has indicated that it did not intend unfinished pillar plates to be classifiable thereunder.

The difficulty with this position is that it will be noted that in subparagraph (f) of the same paragraph here under consideration, to which the court alludes in its decision, where provision is made for "All cases, containers, or housings," there is a provision as follows: "and whether finished or unfinished, complete or incomplete" and that this is prefaced by a provision referring to the cases or containers as follows: "designed or suitable for the enclosure of any of the foregoing movements." It would seem to follow that if the holding of the trial court and the contentions of the party in interest in this case are correct, and that if the term "for which suitable" in subparagraph (c) (2) should have the effect claimed for it, it also would have the effect in subparagraph (f) of rendering nugatory the phrase "finished or unfinished, complete or incomplete"—that is to say, if all cases or containers had to be imported in a condition suitable for any of

the movements provided for in the paragraph, and to be suitable they had to be complete, this provision would be in direct conflict with the provision "finished or unfinished, complete or incomplete."

The trial court also relies very strongly, as does the party in interest, on the decision of this court in *United States* v. *Berger & Co.*, *supra.* There are phases of that case that are clearly in point in deciding the issue here but we do not think the decision in that case is controlling of decision here. In the *Berger* case, the proper dutiable classification of oblong pieces of glass, slightly bent, which were bought and sold as *blanks for bracelet watches* and used for no other purpose than in the making of watch crystals were held to be manufactures of glass rather than watch crystals or "articles of every description not specially provided for, composed * * * of glass * * * whether filled or unfilled, or whether their contents be dutiable or free." The part of the decision with which we are here concerned is the reasons therein assigned for holding that the blanks were not "articles of every description * * * of glass * * * whether filled [etc.]" under paragraph 218 of the Tariff Act of 1922. The glass articles were known and sold as blanks. Unquestionably the articles at bar are more than blanks. They have been advanced from the blank stage to pillar plates nearly finished.

The particular portion, however, of the decision in the *Berger* case, *supra*, upon which the party in interest and the trial court rely is that portion which discusses the effect of the omission in paragraph 218 of the term "finished or unfinished" from the said provision for "articles of every description * * * of glass [etc.]" and of the existence in two other provisions in paragraph 218 of the provision "finished or unfinished." The court said:

> The insertion of such language in two of the preceding provisions of the paragraph and failure to insert it in the provisions under consideration, would seem to indicate that Congress intended to limit the latter provisions to finished articles. We are to some extent confirmed in this conclusion by the provisions, "whether filled or unfilled, or whether their contents be dutiable or free." * * *

It was the opinion of the court that the omission, under the circumstances stated, was some indication as to what Congress intended, especially in view of the fact that the same provision contained the term "whether filled or unfilled [etc.]." No such term or any of similar significance is found in subparagraph (c) (2), *supra.* In the *Berger* case omission of the term "finished or unfinished" in the manner referred to in the opinion, by itself, obviously was not of controlling importance, but was a matter which was entitled under the peculiar circumstances of that case to considerable weight. In the instant case, the omission of the term from subparagraph (c) (2) is entitled to consideration, but in the light of all the circumstances herein recited, we think it is a matter which should not be given controlling effect.

If the views of the trial court and the party in interest are correct, it would follow that since Congress placed the provision "finished or unfinished" in subparagraph (f), which subparagraph is applicable to cases, containers, etc., it must also be held that in all the other numerous provisions of the watch paragraph only completely finished articles can find classification.

To state here definitely what Congress meant by the inclusion of the term "finished or unfinished" in subparagraph (f) or why it was omitted from the other provisions of the paragraph would be mere speculation. But, we are sure that the fact alone that it was included in subparagraph (f) and omitted elsewhere in the numerous provisions of the paragraph, is not persuasive that Congress intended only completed articles to be dutiable under subparagraph (c) (2). So to hold, in our judgment, would not only do violence to the paragraph as a whole but to many other provisions of the tariff act. All that would be necessary to do to avoid classification under paragraph 367, except for the articles provided in subparagraph (f), would be to omit some part or to fail to completely finish the same.

Let us suppose that some of the machines specifically named in paragraph 372 were to be imported with some small but essential part omitted. There is no specific provision in the first part of the paragraph for the machines in their unfinished state. There is, however, a provision for "all other similar textile machinery, finished or unfinished," and for "all other textile machinery, finished or unfinished," and there is also a provision further along in the paragraph for "all other machines, finished or unfinished." We can see no difference in principle in the contentions of the party in interest here from a contention that paragraph 372, by reason of the facts above pointed out, must be similarly construed so as to require that sewing machines, steam turbines, cash registers, lawn mowers, and many other machines specifically named would have to be, in the condition imported, suitable for use without being altered or without any further additions being made thereto.

Many of the paragraphs of the tariff act can be pointed to where the term "finished or unfinished" or its equivalent is omitted and where a holding such as is contended for here by the party in interest would be calculated to completely destroy the provisions. As is suggested by the decisions relied upon by appellant, it is not conceivable that Congress could have anticipated such a result. It would not only permit an avoidance of the intended purposes of the dutiable classification provisions, but would require a holding, under some circumstances, that would invade the free list provisions. For instance, typewriters could not enter free unless they were complete articles, and the free entry of master records and sound records would also be affected. What effect such a holding would have on the free list

340

provisions and the dutiable provisions for works of art would be difficult at this time to foresee.

We think the unfinished pillar plates at bar should find classification in subparagraph (c) (2) of paragraph 367 and that the collector's classification of them was erroneous. The judgment of the United States Customs Court is *reversed*, and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.

GARRETT, Presiding Judge, dissents.