BAHNSEN & Co. *v.* UNITED STATES (No. 1712). UNITED STATES *v.* BAHNSEN & Co. (No. 1713).[1]

1. CONSTRUCTION, PARAGRAPHS 530 AND 385, TARIFF ACT OF 1913—AIDED BY CONTEXT.

The language "all leather not specially provided for in this section," paragraph 530, tariff act of 1913, precludes the classification of any leather (as a material) under paragraph 385.

2. LEATHER CUT TO FORMS—PICKER STRAPS.

Strips of leather designed to be manufactured into picker straps are not dutiable as manufactures of leather under paragraph 360, tariff act of 1913, or as nonenumerated articles manufactured in part under paragraph 385. They are admissible free of duty as "leather," paragraph 530.

United States Court of Customs Appeals, January 16, 1917.

CROSS appeals from Board of United States General Appraisers, Abstract 39351.
[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.
*Brooks & Brooks* (*F. W. Brooks, jr.,* of counsel) contra.

[Oral argument Oct. 12, 1916, by Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These importations were made from Germany and invoiced as "schlagriemen," which, translated, means "straps." They consist of cow leather, chrome cured, strips or straps about 1 inch in

---

[1] Reported in T. D. 36962 (32 Treas. Dec., 83).

width and varying in length from 30 to 36 inches. It appears from the record (pp. 9 and 10) that the cutting into strips is to segregate and collect together for importation those parts of the leather hide suitable for the intended use and to thereby avoid excessive waste. These were imported to be made into picker straps. The appraiser in his answer to protest thus appropriately describes them:

> The merchandise consists of picker straps, leather cut into strips about an inch wide and 30 to 36 inches or thereabouts in length, suitable for manufacture into picker belts. It is of the same character as the so-called "apron leather" or picker straps the subject of T. D. 32908, which was held to be properly dutiable as leather cut into forms, act of 1909.

The processes necessary to complete them for use as and convert them into picker straps are succinctly stated by a witness (p. 8, record) as follows:

> Q. What has to be done to it before it is used?—A. It has to be cut down to proper length, and sometimes the proper width; it has to be punched; holes have to be punched and opening made to fasten it; and sometimes the other end has to be just trimmed off to fit certain parts of the picker.

The samples which are before the court best evidence what processes have been applied to them as leather. They incontrovertibly show that whatever their intended use, or their suitability for use, as imported, nothing has been done upon the leather hide more than to cut certain strips therefrom. The samples, viewed in the light of the testimony, disclose that as imported no process has been applied to the leather intended to finally constitute in all instances its finished condition in use. It appears uncontradicted that in use these strips often have to be cut narrower. Their various lengths, the samples show, are due not to cutting in predetermined lengths, but to the area of the hide from which they were taken, for all the samples show at the ends the irregular hide lines—being strips of different lengths plainly shown to have been cut from side to side or end to end of different hides. Sizes of the hides from which they are cut and economy of material control their dimensions. The sole and only process applied is that of cutting the hide into strips, which the uncontradicted evidence shows to have been done to segregate certain selected parts of the leather and avoid waste. To be made into picker straps they must always be cut to length, sometimes to width, holes punched, openings made to fasten them to the picker, and sometimes they are trimmed off to fit the particular picker.

The importations are materials "suitable for manufacture into picker belts," as reported by the appraiser, but not picker belts. The samples, however, preclude any finding that they are suitable only for that use. They immediately suggest various other uses for which they are equally suitable, such as hame straps, automobile fan belts, belts used as wearing apparel, and belts for an infinite variety

of machinery. In fact, "belting" or straps, materials from which belts and straps are to be made, would seem a more appropriate description of the goods. Identical merchandise was before the court for classification under the tariff act of 1909 in United States *v.* Ringk & Co. (3 Ct. Cust. Appls., 353; T. D. 32908). The court approved a finding of the board that the articles were "belting leather" and not "manufactures of leather," as therein claimed by the collector. The court, however, further held that they were leather "cut into forms suitable for conversion into manufactured articles." They were nevertheless and necessarily held by the court to be *leather.* They were held not to be manufactures *of* leather. They were leather to which certain manufacturing processes had been applied, but not sufficient to destroy their character and condition as leather. This record serves to fully confirm that view.

The present tariff act presents a different pertinent legislative conspectus. It is here again contended by the Government that the articles are manufactures *of* leather under paragraph 360 of the present act. Importers contend that the articles are *leather* manufactured into forms and as such entitled to free entry as "leather not specially provided for" under paragraph 530 of the present act. The board held the merchandise dutiable under paragraph 385 of the act as "nonenumerated articles manufactured in part," "not provided for in this section" of the act. Said provisions in order read:

360. Bags, baskets, belts, satchels, card cases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather or parchment, not jewelry, and manufactures of leather or parchment, or of which leather or parchment is the component material of chief value, not specially provided for in this section, 30 per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining, luncheon, and similar sets, 35 per centum ad valorem.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

530. All leather not specially provided for in this section and leather board or compressed leather; leather cut into shoe uppers or vamps or other forms suitable for conversion into boots or shoes, boots and shoes made wholly or in chief value of leather; leather shoe laces, finished or unfinished; harness, saddles, and saddlery, in sets or in parts, finished or unfinished.

Cross appeals are prosecuted to this court.

We think the necessary concession that the articles are "leather" excludes application of paragraph 385. Paragraph 530 provides for "leather" of all kinds not more specifically provided for in the section. Whether or not more specifically provided for in other paragraphs of the section, paragraph 530 provides for all leather. "All leather," then, is specifically provided for in the section, if not in some other, then in paragraph 530, and paragraph 385 has no application.

While the importations are not manufactures of leather but leather manufactured or cut into forms, as held by this court in the Ringk case, *supra*, there is no specific provision therefor in the act of 1913. Omission of that provision does not change the physical condition of these articles into manufactures of leather, but leaves their status covered by the general term "leather." They are leather cut to certain forms and not being manufactures of leather and there being no more specific provision for leather cut in the particular forms, they are nevertheless "leather" and entitled to free entry as such under the provision of paragraph 530. Judgment and mandate accordingly.

*Reversed.*