UNITED STATES v. NATIONAL IMPORTING CO. (INC.) ET AL. (No. 2325).[1]

MATERIALS AND MANUFACTURES DISTINGUISHED—AMBEROID AND SMOKERS'
ARTICLES—PARAGRAPHS 11 AND 1454, TARIFF ACT OF 1922.

In order to take amberoid out of paragraph 11, tariff act of 1922, providing
for amberoid unmanufactured, and carry it within the provision of paragraph
1454 for smokers' articles, it must be so far manufactured as to commit or
dedicate it to such use alone. Accordingly such material resembling pipe bits
and cigarette holders, but not bored or shaped for such purposes, shown to be
manufactured after importation into smokers' articles and also into jewelry
pendants and drops, is classifiable under paragraph 11 rather than 1454.

United States Court of Custom Appeals, April 21, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8681 (T. D. 39787).

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Marcus Higginbotham, jr.,*
special attorney, of counsel), for the United States.
*John R. Rafter* (*Harry M. Farrell* of counsel) for appellees.

[Oral argument March 19, 1924, by Mr. Hoppin and Mr. Rafter.

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The importation was described by the appraiser as—

Moulded amber bits, anu consists of pipe bits shaped, but not bored. It was
returned for duty at 60 per cent ad valorem under the provision for all smokers'
articles whatsoever, finished or unfinished, n. s. p. f., in paragraph 1454, of the
act of 1922.

The importer protested and the Board of United States General
Appraisers sustained the protest, and held that the importation should
be classified under paragraph 11 of the tariff act of 1922, as *amberoid
unmanufactured*.

The two paragraphs of the tariff act of 1922 to be considered are
as follows:

PAR. 1454. Pipes and smokers' articles: Common tobacco pipes and pipe bowls
made wholly of clay, valued at not more than 40 cents per gross, 15 cents per gross;
valued at more than 40 cents per gross, 45 per centum ad valorem; pipe bowls
commercially known as stummels; pipes, cigar and cigarette holders, not specially
provided for, and mouthpieces for pipes, cigar and cigarette holders, all the fore-
going of whatever material composed, and in whatever condition of manufacture,
whether wholly or partly finished, or whether bored or unbored; pouches for
chewing or smoking tobacco, cases suitable for pipes, cigar and cigarette holders,
finished or partly finished; cigarette books, cigarette-book covers, cigarette paper
in all forms, except cork paper; and all smokers' articles whatsoever, and parts
thereof, finished or unfinished, not specially provided for, of whatever material
composed, except china, porcelain, parian, bisque, earthen or stoneware, 60 per
centum ad valorem; meerschaum, crude or unmanufactured, 20 per centum ad
valorem.

PAR. 11. Gums: Amber and amberoid, unmanufactured, not specially provided
for, $1 per pound; arabic or senegal, ½ cent per pound.

---

[1] T. D. 40169.

Exhibits of the merchandise in question are before this court, and consist of pieces of pressed amber resembling pipe bits and cigarette holders, except that they are not bored or so shaped as to be usable for those purposes in their present condition. Very little change in shape would be required to make them conform exactly with the various kinds of pipe bits and cigarette holders in common use. The evidence taken before the board shows that they are made of small pieces of amber which by a secret process are pressed and moulded into the forms shown in the exhibits; that the exhibits are known to the trade as "amberoid" or "pressed amber"; that the two terms are applied interchangeably to the same product, *pressed amber* being preferred by the trade for the reason that *amberoid* might be mistaken for artificial amber. The evidence is clear and uncontradicted that the importation is sold to manufacturers of pipes and smokers' articles, and to jewelers, and that pendants and drops are made from them by jewelry manufacturers. It is the contention of the Government that an examination of the exhibits is sufficient to warrant their classifications as smokers' articles, also that such examination will compel the conclusion that they are partly manufactured, and that therefore, they can not fall within paragraph 11, which provides for amber and amberoid, unmanufactured.

The importers contend that while the amberoid pieces in shape have an exact resemblance to pipe bits or smokers' articles, they have not been manufactured to such extent as to commit them or dedicate them to use as such, nor to render them commercially unfit for other uses, and that in view of the proof which establishes that their use is for making smokers' articles and jewelry, they must be classified as amberoid, unmanufactured.

The Board of General Appraisers and this court have ruled upon this question on several occasions, and we think the law is too well settled for prolonged discussion or extended citation. In the United States *v.* American Bead Co. (9 Ct. Cust. Appls. 27; T. D. 37873), this court in holding that certain snaps, clasps, and swivels were not parts of chains, said: ·

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Inasmuch as the snaps, clasps, and swivels under discussion are just as applicable to the manufacture of bead necklaces as they are to making of chains, it is evident that they are not finally committed to the manufacture of chains, and consequently it can not be said that they are "parts of chains."

The Board of General Appraisers in the Linkman case (T. D. 31741; G. A. 7244) held similar merchandise to be amberoid, unmanufactured, under the tariff act of 1909. It is true that in the act of 1909 there is no paragraph containing the exact provisions of paragraph 1454 of the act of 1922. We think the reasoning of the board is very helpful in the case at bar. If there was no evidence showing a use other than for smokers' articles, the existence of paragraph 1454 might bring us to a conclusion different from that reached by the board in the Linkman case.

The authorities seem to be unanimous in their support of the proposition that in order to take the importation out of paragraph 11 as amberoid, unmanufactured, it must be found that they were manufactured to such extent that they were committed or dedicated to a use as smokers' articles alone, and that if they had not been so manufactured when imported, and were in such form that they could readily be used for other purposes and were so used, they should be classified as amberoid, unmanufactured.—United States v. Lyon & Healy (4 Ct. Cust. Appls. 438; T. D. 33873), Wyman v. United States (T. D. 28924), Athenia Steel & Wire Co. v. United States (1 Ct. Cust. Appls. 494; T. D. 31528), Worthington v. Robbins (139 U. S. 337).

The Government cites Knauth v. United States (1 Ct. Cust. Appls. 334; T. D. 31432), Vandiver v. United States (1 Ct. Cust. Appls. 194; T. D. 31219), and Cross v. United States (1 Ct. Cust. Appls. 377; T. D. 31457). The merchandise in the Knauth case was cigarette boxes marked "Alma Cigarettes;" in the Vandiver case, the importations were finished cedar boxes with brass trimmings, labeled "Cigars;" in the Cross case, the importation was described as cigar and cigarette cases composed in chief value of leather. In this line of cases the articles in dispute were finished and were dedicated to certain uses. They do not support the Government's contention in the case at bar, but in principle support the position of the importer.

The reliance of the Government on the case of United States v. Lyon & Healy, supra, is without justification. Violin and cello necks were held to be parts of musical instruments because they were so far shaped as to indicate per se their ultimate use, and as imported were unfit for any other use. Round pieces of wood and ivory, intended to be made into mouthpieces for flutes, etc., were held not to be parts of musical instruments in so far as their ultimate use could not be definitely determined. We think the court's opinion in this case supports the opposite contention to that insisted upon by the Government in this case.

The judgment of the Board of General Appraisers is *affirmed*.