BEFORE THE FIRST DIVISION, FEBRUARY 21, 1945

**No. 50035.**—Protest 94979–K of Dessart Bros., Inc. (New York).

COLE, Judge:   Merchandise invoiced as "2nd. Qual. Beard Wool" was classified by the collector as "carded wool advanced beyond the scoured condition, not further advanced than rovings" and assessed with duty at 37 cents per pound plus 12½ percent ad valorem under paragraph 1106, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1106), as modified by the trade agreement with the United Kingdom (T. D. 49753), reading as follows:

Wool, and hair of the kinds provided for in schedule 11, Tariff Act of 1930, if carbonized, or advanced in any manner or by any process of manufacture beyond the washed or scoured condition, including tops, but not further advanced than roving.

Plaintiff claims that the instant merchandise, although wool processed not beyond roving, is nevertheless excluded from said paragraph because it has been made into a definite commodity dedicated to limited uses, i. e., making Santa Claus masks and wigs, and therefore classifiable under the residuary provision in paragraph 1120, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1120), for "manufactures, wholly or in chief value of wool, not specially provided for," carrying a rate of duty of 50 percent ad valorem.

The testimony of three witnesses and several illustrative samples of processed wool were offered by plaintiff as a factual basis to support its contention. Defendant offered no evidence to contradict plaintiff's line of proof.

The foreign manufacturer, possessing 25 years' association with the manufacture and dyeing of imitation hair, testified through deposition (plaintiff's exhibit 1). It is clear from his testimony that the beard wool under consideration is produced from raw wool which is scoured, carded, and manufactured into a wool top that is bleached and dyed and then subjected to secret processes on machines specially adapted by the witness, and not used elsewhere in the wool processing trade, for the exclusive manufacture of the imported beard wool whose sole use is in the making of beards and mustaches.   Emphasizing that the instant merchandise cannot be used in the textile industry, he stated that its length and width, and the production of the wool in flat layers would render it unsuitable therefor; that the special processes used by him materially differ from those employed in

the production of wool roving used for spinning into yarn; and that in order to make the imported merchandise available for textile purposes it would have to undergo a demolition process.

To fill the omission created by the failure of the English manufacturer to detail all of the manufacturing processes, plaintiff produced the president of the plaintiff corporation and the United States examiner whose advisory classification was adopted by the collector. It appears from their combined testimony that raw wool, as shorn from the animal, is in a greasy state (exhibit 3—compartment 1), and therefore is scoured and carbonized, by immersion in an acid bath, to remove all burrs and vegetable matter. The fibers, however, are left in varying lengths, just as they are when taken from the animal. The wool is then passed through a carding process that opens and straightens the fibers and draws them into rope form, or as a thin filament about the width of the machine, 5 or 6 inches wide (exhibit 3—compartment 3), convenient for introducing the material into the combing machine where the short fibers are removed and the remaining ones arranged in somewhat uniform length, producing what is known as a wool top (exhibit 3—compartment 4). The wool top has no commercial use of itself, being merely the result of an intermediate process usually followed in the continuous treatment of wool toward the production of yarn. The wool top is in length of several hundred yards and in the form of a large ball, facilitating its transmission from one machine to another. Further processing, known as wool roving, parallelizes and strengthens the fibers, drawing them through machines, reducing their size from the diameter of the top to a pencil-like form that is delivered from the roving machine in a continuous strand, many yards long (exhibit 3—compartment 6). The imported merchandise (exhibit 1–A and exhibit 2) has unquestionably been processed through the usual operations for producing the wool top, but subsequent thereto the material has been manipulated in a manner materially different from that followed in the usual course of manufacturing yarn. This is obvious from the size and structure which very definitely precludes adaptability of the imported product as yarn but dedicates it to the specific use which plaintiff employs, described by the president of plaintiff corporation as follows (R. 42):

The girl, jobber lays it across her lap. It is put up in a form so that then depending on the goods she is making she slits this into one, two, or three layers. If we are making a fine product she uses two layers, if she is using the cheaper product, making a cheaper beard, she uses one layer. She pulls off a given amount (demonstrating), she takes that and lays it across the mask in the sewing machine, sews it across and turns it back and it forms a beard on the mask. We also use it to lay over wig forms to make Santa Claus wigs, or Santa Claus beard. The principal use is for Santa Claus beards on masks.

No processing beyond its imported condition is required for the exclusive use, as above described, of the imported beard wool whose only source of supply is the English manufacturer of the present merchandise.

*Mittelstaedt (Inc.)* v. *United States*, 11 Ct. Cust. Appls. 471, T. D. 39537, is in point. The case arose under the Tariff Act of 1913 and involved tariff classification of craped wool. The merchandise was classified as a manufacture of wool, not specially provided for, under paragraph 288 of said tariff act, and was claimed to be dutiable under a provision for "combed wool or tops and roving or roping made wholly or in part of wool * * * which have been advanced in any manner or in any process of manufacture beyond the washed or scoured condition not specially provided for." Although the statutory language of the competing provisions in the cited case differed somewhat from the paragraphs involved in the instant case, the issue here is substantially the same as that presented there. In the quoted case, the court found the craped wool to be a product resulting from the processing of the raw wool into wool tops with subsequent operations ulti-

·mately producing the imported commodity, exclusively used for "hair rolls, dolls' wigs, theatrical wigs and moustaches." In holding the merchandise to be ·classifiable as a *manufacture of wool* the court stated:

\* \* \*. The merchandise is not now combed wool or tops or roping or roving. It is craped wool. By the treatment to which it has been subjected it has been set apart to very limited uses for which wool tops without such treatment are ·unsuited.

'The same language has equal application to the beard wool under consideration.

The "Summary of Tariff Information of 1929," compiled by the United States 'Tariff Commission for the use of the Committee on Ways and Means "in connec- ·tion with an examination of the Tariff Act of 1922, for the purpose of making ·any readjustments in said act where found necessary," includes comment con- ·cerning paragraph 1106, Tariff Act of 1922, the prototype paragraph of the ·one under which the merchandise in question was classified. Page 1694 of the ·official publication referred to contains the following, as indicative of the lim- ited scope of said paragraph 1106, as amended, *supra:*

*Description and uses.*—Paragraph 1106 covers all partial manufactures of wool or hair advanced beyond the raw-material stage but not yet spun into yarn. It includes laps and sliver from the preparing machines, sliver from the worsted cards and can gill boxes, tops from the worsted comb, sliver from spindle gill boxes, sliver or drawing from draw frames, slubbing from slubbers, roving from worsted speeders, and laps and roving from woolen cards. It also includes wool or hair which has been either carbonized or dyed. Tops, which are combed wool slivers put up in flat-end balls, are the only article of commercial importance; the other partial manufactures are rarely bought 'or sold, being utilized in the mills where produced. Tops are used almost exclusively for conversion into worsted yarn. Small amounts are used for other purposes, for instance, some mohair tops are employed in the manufacture of wool crape for hair rolls, dolls' wigs, and theatrical wigs and mustaches.

.The foregoing excerpt lends support to the statutory interpretation laid down in the *Mittelstaedt* case, *supra*, which we accept as controlling here, and we therefore hold the beard wool in question to be classifiable under paragraph 1120, *supra*, ·as a manufacture of wool, not specially provided for, as claimed.

The protest is sustained and the decision of the collector is reversed. Judgment will be rendered accordingly.