UNITED STATES v. F. B. VANDEGRIFT & Co., INC. (No. 4874)[1]

[1] C. A. D. 628.

United States Court of Customs and Patent Appeals, November 30, 1956

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Alfred A. Taylor, Jr.* and *Richard H. Welsh*, trial attorneys, of counsel), for the United States.

*Allerton deC. Tompkins* for appellee.

[Oral argument October 2, 1956, by Mr. Welsh and Mr. Tompkins]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, COLE, and RICH, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C. D. 1757, sustaining the importer's protest and holding the merchandise here involved to be classifiable as "manufactures composed wholly or in chief value of india rubber known as 'hard rubber', not specially provided for, finished or unfinished," under paragraph 1537(b) of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the Presidential proclamation in connection therewith, T. D. 51939. The merchandise had been classified by the Collector of Customs as parts of storage batteries under paragraph 320 of the Tariff Act of 1930 as modified by T. D. 51802, *supra*. The pertinent statutory provisions as thus modified read as follows:

Par. 320. Electric storage batteries and parts thereof, storage battery plates, and storage battery plate material, wholly or partly manufactured, all the foregoing not specially provided for, 20 per centum ad val.

1537(b) Manufactures composed wholly or in chief value of india rubber known as "hard rubber", not specially provided for, finished or unfinished:

Syringes_____ 17½% ad val.
Other_____ 12½% ad val.

It appears from the testimony of record that the merchandise as imported consists of tubes composed of hard rubber known as india rubber and about 2½ to 4 feet in length. These tubes are made by an extrusion process, coming from the mill as a continuous tube which is cut into the lengths above described. The cut tubes are rolled in talc and vulcanized, after which the ends are trimmed and the tubes cleaned and packed for shipment. The tubes are formed with a rib along the side for the purpose of stiffening them.

After they are imported into the United States, the tubes are subjected to an elaborate process which includes heating, slotting part way through with 28 slots to the inch and cutting to the desired length, after which a number of the tubes are assembled on a grid structure where they are filled with red-lead oxide, and the open ends of the tubes are sealed. The tubes are then subjected to the action of sulfuric acid which converts the red-lead to lead sulfate. The process described produces positive plates. Negative plates may be made by a similar process. To form a battery, a number of positive and negative plates are assembled by a process, the details of which are not material here.

The Customs Court held that if the merchandise is to be classified under paragraph 320 either as electric storage battery parts or as storage battery plate material, wholly or partly manufactured, it must appear that the merchandise is dedicated to use in a storage battery, citing the following decisions in support of that holding: *Worthington* v. *Robbins*, 139 U. S. 337; *Athenia Steel and Wire Co.* v. *United States*, 1 Ct. Cust. Appls. 494, T. D. 31528; *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873; *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T. D. 40169; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669.

In view of the above authorities, the issue to be determined in the instant case is whether the lower court's holding that the merchandise here involved was not dedicated to storage battery use was a proper decision.

Appellee's witness, Lester E. Lighton, testified that the merchandise here involved was ordered to definite specifications as to dimensions and grade of material; that the dimensions must be accurate within fairly small tolerances; and that the merchandise is intended solely for use in storage batteries. Lighton stated also that the tubes here under consideration were used in France, where he first saw them, by storage battery people; and there is no reliable evidence that they have been or can be used commercially for any other purpose.

While there is testimony of record to the effect that the tubes have been used, on occasion, by workers in the laboratory for siphoning liquids, and that once at least a piece of a tube was used as a cigarette holder, such incidental or fugitive uses which were made of the tubes, merely because they happened to be available, do not, in our opinion, preclude a holding that the tubes are dedicated to use in storage batteries.

It is doubtless true that the specially designed and manufactured tubing here under consideration might be used in certain situations as a liquid conduit, just as many small objects may be used as paper weights or a smoker's pipe might be used for blowing bubbles, but where, as here, an article is designed and manufactured with a single

purpose in mind and is made to specifications which peculiarly adapt it to that purpose, it is properly considered to be dedicated to that purpose, despite the fact that it may happen to be used in other situations where no use is made of its special features of design.

While the merchandise here involved has been altered in many substantial respects between the time of its importation and its use in a battery, we are of the opinion that it is properly classifiable as storage battery plate material, under paragraph 320 of the Tariff Act of 1930, as modified.

The judgment of the United States Customs Court is accordingly *reversed.*

WORLEY, J. dissents.

COLE, J., was present at the argument of this case, but, because of illness, did not participate in the decision.