HARDWOOD MANUFACTURING COMPANY, A DIVISION OF ELGIN NATIONAL INDUSTRIES, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82-5-00724, Court No. 82-5-00725 (Consolidated)

Before: CARMAN, *Judge.*

(Dated May 30, 1984)

*Stack & Filpi, (Mark D. Debofsky* at the trial) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division (*Jerry P. Wiskin* at the trial) for the defendant.

CARMAN, *Judge:* The question in this case is whether certain wood and rattan frames, in their imported condition, were properly classifiable as "clock cases and parts thereof."

The plaintiff, Harwood Manufacturing Company, is the importer of record of certain frames made of wood and rattan imported from Taiwan. The entries were duly liquidated and the sum of $5,550.52 was paid by plaintiff with regard to the merchandise that is the subject of this action.

The United States Customs Service (Customs) classified the merchandise under item 720.34 of the Tariff Schedules of the United States (TSUS) which provides:

Clock cases, cases for time switches or for other
 apparatus provided for in this subpart, and
 parts of the foregoing cases:
Clock cases and parts thereof:

\* \* \* \* \* \* \*

Other

\* \* \* \* \* \* \*

Other................................................................ 11.9% ad
val.

Plaintiff contests this classification and alternatively asserts that the merchandise is properly classifiable under item A206.60 ("Picture and mirror frames, of wood"), item A222.10 ("Rattan (except whole rattan) and webbing made therefrom"), or item A222.60 ("Articles not specially provided for, of unspun fibrous vegetable materials: Of one or more of the materials bamboo, rattan, willow, or chip"), and is entitled to duty-free entry under the Generalized System of Preferences (GSP).

The subject merchandise, as imported, consists simply of square or rectangular frames made from either wood, rattan, bamboo or wicker. After importation, Harwood processes these frames so that completed clocks are capable of being placed within the frames. In their imported condition, the frames contain no metallic parts or any clock apparatus whatsoever. The frames alone actually resemble picture or mirror frames rather than clock cases.

The court initially notes the presumption of correctness that attaches to Customs' classification. *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States,* 47 CCPA 88, 91 (1960); 28 U.S.C. § 2639(a)(1) (1982). After reviewing the evidence introduced at the trial, the court finds that the imported frames, which contain no clock works or metallic parts, are easily adaptable to picture or mirror frames and should not have been classified as clock cases. The mere fact that plaintiff subjects the frames to additional manufacturing processes and ultimately inserts complete clocks into the frames is not sufficient to identify the frames as parts of clocks for classification purposes.

In *Worthington* v. *Robbins,* 139 U.S. 337 (1891), the Supreme Court considered the issue of the proper classification of "white hard enamel" used when a smooth, enameled surface was required. The collector had placed the merchandise under a provision in the Revised Statutes providing for "[w]atches, watchcases, watch movements, parts of watches and watch materials, not specially enumerated or provided for in this act." It was clear from the record that the enamel was capable of being used to make faces or surfaces for watches and dials and that indeed the enamel was put to such use. The Court found it highly significant, however, that there "was nothing to prevent [plaintiff] from selling [the merchandise] to persons who would use it for other purposes." 139 U.S. at 341. The Court went on to note:

> In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported. * * *
>
> * * * The fact that the article in question was used in the manufacture of watches has no relation to the condition of the article as imported, but to what afterwards the importer did with it.

*Id.* The *Worthington* case, which also involved timepieces, relates to the case at hand. Classification of the frames as clock cases is precluded because their form must be changed and "new processes of manufacture [must] be applied" before the frames can be used as clock cases. *Id.; see United States* v. *National Importing Co.,* 12 Ct. Cust. Appls. 186, 188 (1924); *Athenia Steel & Wire Co.* v. *United States,* 1 Ct. Cust. Appls. 494, 495–96 (1911).

More recently, in *Avins Industrial Products Co.* v. *United States,* 62 CCPA 83, 515 F.2d 782 (1975), our appellate court considered the proper classification of stainless steel wire. The government's classification was under item 685.25 as unfinished parts of radio reception antennas. The plaintiff's claimed classification was under item 609.45 as simply "wire of iron or steel." The court found that although the merchandise as imported conformed to certain specifications for antenna manufacture, the articles nevertheless had not been "sufficient[ly] manipulat[ed] to dedicate the wire to the single use as an antenna part." 62 CCPA at 86; 515 F.2d at 784. Thus, in the court's view, because the merchandise in its imported condition could be used for several purposes, its classification as parts of radio antennas was erroneous. *Id.* Applying the same reasoning here, it was error to classify the frames in issue here under the "clock cases" provision, item 720.34, TSUS.

In order to prevail at this juncture without the necessity for further proceedings, a plaintiff should endeavor to establish the appropriateness of one of its claimed alternative classifications. Recently, in *Jarvis Clark Co.* v. *United States,* No. 83–1106 (Fed. Cir. May 2, 1984), the Federal Circuit held that if the Court of International Trade determines that the importer's proposed classification is incorrect, the court's inquiry cannot end there. The correctness of the government's classification must be considered as well. The appellate court indicated that the trial court could, when in its view, erroneous alternatives are placed before it, in its discretion, remand the case for reclassification by the Customs Service, or decide the case upon its own initiative.

The court of appeals acknowledged the presumption of correctness that attaches to a classification by the Customs Service and indicated that an importer had the burden of proving that the classification was incorrect. *See* 28 U.S.C. § 2639(a)(1) (1982). In the past, according to the *Jarvis Clark* court, to give effect to this presumption, courts have long imposed a "dual burden" of proof: the

importer not only was required to show that the government's classification was erroneous but also that the importer's alternative classification was correct. The court of appeals indicated, nevertheless, that the dual burden could lead to unfair and illogical results because the court might be required to affirm an incorrect classification. The court also appeared to be troubled that prior to the creation of the Court of International Trade in 1980, the Customs Court and its predecessors had limited remedial powers, and might, therefore, be required to dismiss a case and effectively affirm the government's incorrect classification.

The court of appeals in *Jarvis Clark,* while discussing the legislative history of 28 U.S.C. § 2643(b), indicated that a principal purpose of this provision was to alleviate the unfairness of the so-called dual burden of proof. The court quoted a House Report at length:

> Subsection (b) is a new provision that empowers the Court of International Trade to remand the civil action before it for further judicial or administrative proceedings. In granting this remand power to the court, the Committee intends that the remand power be co-extensive with that of a federal district court. In addition, this subsection authorizes the court to order a retrial or rehearing to permit the parties to introduce additional evidence.
>
> Subsection (b) has particular impact on civil actions brought pursuant to section 515 or 516 of the Tariff Act of 1930. Under existing law, for example, in a civil action commenced under the court's jurisdiction to entertain cases involving the classification or valuation of merchandise, if the plaintiff succeeds in demonstrating that the original decision of the Customs Service was incorrect but is unable to establish the correct classification or valuation, the court dismisses the civil action. In effect, the court holds in favor of the United States even though the plaintiff has demonstrated that the challenged decision of the Customs Service was erroneous. Subsection (b) would permit the court in this situation to remand the matter to the Customs Service to make the correct decision or to schedule a retrial or rehearing so that the parties may introduce additonal evidence.

H.R. Rep. No. 1235, 96th Cong., 2d Sess. 60–61, *reprinted in* 1980 U.S. Code Cong. & Ad. News 3729, 3772.

The possibility of an unjust result that might have occurred by requiring this court to dismiss and perforce affirm an incorrect government classification because of the lack of general remedial powers was changed by the enactment of section 2643(b). The effect of the so-called dual burden was modified. It would seem, nevertheless, our appellate court in the interest of judicial economy will continue to approve the pleading and proving by litigants of alternative classifications as was done in this case, to assist this court in securing a prompt resolution of classification disputes.

Turning then to plaintiff's claims, defendant asserts that classification of the subject merchandise under items A206.60, A222.10, or A222.60 is precluded as a matter of fact. Item A206.60, defendant points out, requires that frames be "of wood," and that the frames here do not so qualify. Similarly, under item A222.60, the article not specifically provided for must be "of unspun fibrous vegetable materials," and the frames, defendant claims, does not qualify under this provision. As to item A222.10, "rattan (except whole rattan) and webbing made therefrom," defendant asserts that this is a materials provision and that the imported merchandise in issue here consists of articles, not materials.

Defendant's points are well taken regarding classification under items A206.60 and A222.10. The court is of the opinion, however, that item A222.60 describes the merchandise in question and is a sustainable classification.

Under both item A222.60 and headnote 2(d) of Schedule 2, part 2, subpart B, bamboo is designated an "unspun fibrous vegetable material." "Frames" as such is not otherwise specifically provided for in the subpart. Hence, classification under the subpart's basket provision is appropriate.

Plaintiff's Exhibit 4 is a catalog of plaintiff's parent company's products, and depicts the clocks for which the imported frames are used. These frames are variously termed, according to the descriptions as "wood," "rattan," "wicker," and "bamboo." Defendant attempted to show that the presence of wood disqualified the merchandise from classification under item A222.60. Plaintiffs' only witness, however, a management employee of Elgin National Industries, Inc., testified that the frames actually consisted of bamboo and that the other descriptions in the catalog were "just * * * phrasing[s] of advertising." Transcript, at 26.

Thus, item 222.60, TSUS, providing for "[a]rticles not specifically provided for, of unspun fibrous vegetable materials," accurately describes the merchandise in issue here.

Lastly, plaintiff is seeking to have the merchandise entered duty free under the GSP, since Taiwan is a designated beneficiary country for such treatment. Section 10.173(a)(1) of the Customs Regulations [1] requires that a certificate of origin (commonly referred to as a "Form A") be submitted in connection with the entry as a condition precedent to GSP treatment. In this case, plaintiff did not file the required certificates at the time it made the entries. Under section 10.112 of the Customs Regulations, however, the certificates or origin may be filed "before the liquidation becomes final." 19

---

[1] 19 C.F.R. ¶ 10.173(a)(1) (1983) provides:
*Shipments valued in excess of $250—Certificate of Origin.* Except as provided in paragraph (a)(5) of this section, the importer or consignee of a shipment of eligible merchandise valued in excess of $250 shall file with the district director in connection with the entry the Generalized System of Preferences Certificate of Origin Form A, as evidence of the country or origin. Form A shall be signed by the exporter of the merchandise in the country from which it is directly imported, certified by the designated governmental authority in that country, and properly completed.

C.F.R. § 10.112 (1983).[2] Plaintiff, therefore, attempted to introduce three certificates as exhibits at the trial. Defendant objected to the exhibits, claiming that it was incumbent upon plaintiff to show that its failure to file the certificates at the time of entry was not "due to willful negligence or fraudulent intent." *Id.* A more sensible approach to 19 C.F.R. § 10.112, however, would be to interpret that provision as requiring the defendant to make some showing of fraud or willful neglect. Plaintiff need not show its freedom from wrongdoing in order to file the certificates at trial. Thus, plaintiffs entries are entitled to be treated under the GSP and entered duty free.

## Conclusion

Plaintiff has successfully shown Customs' classification to be erroneous, and, in addition, has proven that its claimed alternative classification is correct. The merchandise, consisting of bamboo, and rattan frames is properly classifiable under item A222.60, TSUS, and entitled to duty-free entry under the GSP.[3]

Judgment will enter accordingly.

---

[2] 19 C.F.R. § 10.112 (1983) provides in part:
 Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final.* * *

[3] Plaintiff has asked the court to award costs and attorney's fees should it prevail on the merits in this action. Having found no basis for such an award, this request is denied and the parties shall bear their own costs and fees.